IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

PHYLLIS BOONE,                          §
                                        §
            Plaintiff,                  §
                                        §
V.                                      §          No. 3:14-cv-1881-BN
                                        §
CAROLYN W. COLVIN,                      §
Acting Commissioner of Social Security, §
                                        §
            Defendant.                  §

## MEMORANDUM OPINION AND ORDER

Plaintiff Phyllis Boone seeks judicial review of a final adverse decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). For the reasons stated herein, the hearing decision is reversed.

### Background

Plaintiff alleges that she is disabled due to a variety of ailments, including low back pain, carpal tunnel syndrome, uterine fibroids, borderline intellectual functioning, and adjustment disorder. After her applications for disability insurance benefits and supplemental security income ("SSI") benefits were denied initially and on reconsideration, Plaintiff requested a hearing before an administrative law judge ("ALJ"). That hearing was held on November 6, 2012. *See* Administrative Record [Dkt. No. 11 ("Tr.")] at 66-100. At the time of the hearing, Plaintiff was 51 years old. *See id.* at 69. She is a high school graduate and has past work experience as a home health attendant and cook. *See id.* at 48, 70. Plaintiff has not engaged in substantial gainful activity since May 1, 2010. *See id.* at 41.

The ALJ found that Plaintiff was not disabled and therefore not entitled to disability or SSI benefits. Although the medical evidence established that Plaintiff suffered from degenerative disc disease of the lumbar spine, carpal tunnel syndrome on the left, and uterine fibroids, the ALJ concluded that the severity of those impairments did not meet or equal any impairment listed in the social security regulations. *See id.* at 41. The ALJ further determined that Plaintiff had the residual functional capacity to perform a limited range of light work but could not return to her past relevant employment. *See id.* at 43. Relying on a vocational expert's testimony, the ALJ found that Plaintiff was capable of working as a photocopying machine operator, housekeeping cleaner, and counter attendant – jobs that exist in significant numbers in the national economy. *See id.* at 49.

Plaintiff appealed that decision to the Appeals Council. The Council affirmed.

Plaintiff then filed this action in federal district court. Plaintiff contends that the hearing decision is not supported by substantial evidence and results from reversible legal error. More particularly, Plaintiff argues that: (1) the ALJ impermissibly substituted his opinion for that of an examining psychologist who diagnosed Plaintiff with borderline intellectual functioning and adjustment disorder with anxiety; (2) as a result, Plaintiff was harmed because the ALJ found no medically determinable mental impairment, did not perform the regulatory "special technique" concerning mental impairments, did not request a psychological consultative examination, and issued a RFC finding that included no psychological limitations; and (3) the ALJ applied an incorrect legal standard to Plaintiff's examining physicians.

2

The Court determines that the hearing decision must be reversed and this case remanded to the Commissioner of Social Security for further proceedings consistent with this opinion.

## Legal Standards

Judicial review in social security cases is limited to determining whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether Commissioner applied the proper legal standards to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *accord Copeland*, 771 F.3d at 923. The Commissioner, rather than the courts, must resolve conflicts in the evidence, including weighing conflicting testimony and determining witnesses' credibility, and the Court does not try the issues *de novo. See Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). This Court may not reweigh the evidence or substitute its judgment for the Commissioner's but must scrutinize the entire record to ascertain whether substantial evidence supports the hearing decision. *See Copeland*, 771 F.3d at 923; *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988). The Court "may affirm only on the grounds that the Commissioner stated for [the] decision." *Copeland*, 771 F.3d at 923.

"In order to qualify for disability insurance benefits or supplemental security income, a claimant must suffer from a disability." *Id.* (citing 42 U.S.C. § 423(d)(1)(A)). A disabled worker is entitled to monthly social security benefits if certain conditions are met. *See* 42 U.S.C. § 423(a). The Act defines "disability" as the inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued period of 12 months. *See id.* § 423(d)(1)(A); *see also Copeland*, 771 F.3d at 923; *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). The Commissioner has promulgated a five-step sequential evaluation process that must be followed in making a disability determination:

1. The hearing officer must ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2. The hearing officer must determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities. This determination must be made solely on the basis of the medical evidence.

3. The hearing officer must decide if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations. The hearing officer must make this determination using only medical evidence.

4. If the claimant has a "severe impairment" covered by the regulations, the hearing officer must determine whether the claimant can perform his or her past work despite any limitations.

5. If the claimant does not have the residual functional capacity to perform past work, the hearing officer must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the

4

> claimant's age, education, work experience, and residual functional capacity.

See 20 C.F.R. § 404.1520(b)-(f); *Copeland*, 771 F.3d at 923 ("The Commissioner typically uses a sequential five-step process to determine whether a claimant is disabled within the meaning of the Social Security Act. The analysis is: First, the claimant must not be presently working. Second, a claimant must establish that he has an impairment or combination of impairments which significantly limit [her] physical or mental ability to do basic work activities. Third, to secure a finding of disability without consideration of age, education, and work experience, a claimant must establish that his impairment meets or equals an impairment in the appendix to the regulations. Fourth, a claimant must establish that his impairment prevents him from doing past relevant work. Finally, the burden shifts to the Secretary to establish that the claimant can perform the relevant work. If the Secretary meets this burden, the claimant must then prove that he cannot in fact perform the work suggested." (internal quotation marks omitted)); *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007) ("In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity.").

The claimant bears the initial burden of establishing a disability through the first four steps of the analysis; on the fifth, the burden shifts to the Commissioner to show that there is other substantial work in the national economy that the claimant can perform. *See Copeland*, 771 F.3d at 923; *Audler*, 501 F.3d at 448. A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *See Copeland*, 771 F.3d at 923; *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In reviewing the propriety of a decision that a claimant is not disabled, the Court's function is to ascertain whether the record as a whole contains substantial evidence to support the Commissioner's final decision. The Court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *See Martinez*, 64 F.3d at 174.

The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *See Ripley*, 67 F.3d at 557. If the ALJ does not satisfy this duty, the resulting decision is not substantially justified. *See id*. However, the Court does not hold the ALJ to procedural perfection and will reverse the ALJ's decision as not supported by substantial evidence where the claimant shows that the ALJ failed to fulfill the duty to adequately develop the record only if that failure prejudiced Plaintiff, *see Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012) – that is, only if Plaintiff's substantial rights have been affected, *see Audler*, 501 F.3d at 448. "Prejudice can be

6

established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision." *Ripley*, 67 F.3d at 557 n.22. Put another way, Plaintiff "must show that he could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728-29 (5th Cir. 1996).

## Analysis

Among the arguments that Plaintiff makes is a single ground that compels reversal and remand: the ALJ's rejection of the medical opinions of the only examining psychologist is not supported by substantial evidence.[1] The ALJ "may not substitute [his] opinion for the opinion of a treating physician whose testimony is uncontroverted." *Blades v. Comm'r of Soc. Sec. Admin.*, No. 3:01-cv-2483-K, 2003 U.S. Dist. LEXIS 23165, at *24 (N.D. Tex. Dec. 12, 2003) (citing *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985)). When an ALJ rejects an uncontroverted examining physician's opinion of a severe mental impairment, the resulting decision is not supported by substantial evidence. *See id.* Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices" or 'no contrary medical evidence.'" *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983) (quoting *Hemphill v. Weinberger*, 483 F.2d 1137 (5th Cir. 1973)).

---

[1] By remanding this case for further administrative proceedings, the Court does not suggest that Plaintiff is or should be found disabled.

On August 9, 2005, J. Lawrence Muirhead, Ph.D. performed a psychological evaluation of Plaintiff in association with her vocational training and rehabilitation at the Department of Assistive and Rehabilitation Services ("DARS"). *See* Tr. at 435-440. Dr. Muirhead reported that, in addition to physical limitations from an on-the-job lumbar back injury and left-sided carpel tunnel syndrome, Plaintiff complained of ongoing symptoms of depression and anxiety. Concerning her mental status, Dr. Muirhead noted that Plaintiff's speech was limited to short sentences, her mood was mildly dysphoric, and her affect was restricted in range. Dr. Muirhead reported that Plaintiff was able to repeat five digits forward and four digits backward, a below average result that remains within normal limits. Dr. Muirhead further reported that Plaintiff's thought processes were impoverished in content, that intellectually Plaintiff appeared to function in a borderline range, and that Plaintiff's judgment appeared to be significantly compromised by intellectual deficit.

Dr. Muirhead administered several tests, including a Diagnostic Interview, the Wechsler Adult Intelligence Scale ("WAIS-II"), the Wide Range Achievement Test-Revised ("WRAT-R"), and the Minnesota Multiphasic Personality Inventory ("MMPI"). Dr. Muirhead reported that Plaintiff performed within the borderline range on the WAIS-II and scored in the 5 percentile range on the WRAT-R. Specifically, on the WAIS-II, Plaintiff had a Verbal Scale IQ score of 75, a Performance Scale IQ Score of 80, and a Full Scale IQ Score of 76. Based on these two tests, Dr. Muirhead reported that Plaintiff's verbal abilities were poorly developed and that she had an impoverished

general fund of information and spoken vocabulary and only a marginal comprehension of social behavior.

Dr. Muir reported that Plaintiff's personality profile had two significant features: a somatic preoccupation associated with chronic pain syndrome and agitation and anxiety primarily attributable to lack of a marketable skill. Dr. Muirhead noted a compromised frustration tolerance with a susceptibility to verbal outbursts. He also noted that Plaintiff preferred to avoid psychotropic medications due to associated debilitating side effects. Dr. Muirhead reported that the MMPI did not reflect a significant personality disorder. Instead, Dr. Muirhead reported that Plaintiff's primary interpersonal limitations are associated with intellectual deficit rather than personality dysfunction.

Dr. Muirhead then diagnosed Plaintiff with adjustment disorder with anxious mood and borderline intellectual functioning. He noted that Plaintiff had a global assessment of functioning ("GAF") of 60. In a section titled "Functional Limitations," Dr. Muirhead stated in his report that the symptoms associated with Plaintiff's adjustment disorder with anxious mood include persisting daily anxiety, agitation, and compromised frustration tolerance and that those symptoms could be expected to substantially remit with return to the work force. Dr. Muirhead also stated that, intellectually, Plaintiff functions in a borderline range. She has an impoverished spoken vocabulary and poor written language skills, and her fine visual-motor ability is significantly below average.

A DARS medical consultant reported on August 25, 2005 that a medical and psychological review demonstrated the presence of both medical and psychological impairments. The psychological impairments were those found by Dr. Muirhead: borderline intellectual functioning and adjustment disorder with anxious mood. *See id.* at 452. A DARS vocational rehabilitation consultant reported on September 18, 2005 that Plaintiff's intellectual functioning score was within the low average range with an intelligence score of 85 on the Wide Range Intelligence and Personality Test ("WRIPT"). He also noted that Plaintiff had a sixth-grade reading level, fourth-grade arithmetic level, and eighth-grade reading comprehension level. *See id.* at 442-443. Those findings also were consistent with Dr. Muirhead's report.

Plaintiff applied for disability insurance benefits and SSI benefits on July 29, 2011 and alleged that she became unable to work because of her disabling conditions on May 1, 2010. *See id.* at 169, 176. In her disability report, Plaintiff listed her disabling conditions as a slipped disc and wrist problems. She did not list a mental impairment. *See id.* at 204.

At step two, the ALJ found that Plaintiff does not have a medically determinable mental impairment. The ALJ acknowledged that Plaintiff was treated for depression in 2003 and diagnosed with mental impairments during a consultative examination for a DARS report in 2005. The ALJ then stated that the mental diagnosis was several years before Plaintiff's alleged onset date; that, after the diagnosis, Plaintiff worked in a position that required a higher specific vocational preparation than unskilled work; and that "mini-psychiatric" examinations in 2011 and 2012 showed normal mood

and affect. The ALJ also noted that Plaintiff did not allege a mental impairment during the application process. *See id.* at 42.

But none of this is medical evidence that would controvert Dr. Muirhead's opinion. According to the record, Dr. Muirhead was the only physician to perform a psychological examination. The ALJ cites to "mini-psychiatric examinations in 2011 and 2012 [that] showed a normal mood and affect," but those medical providers were investigating other, physical abnormalities, not Plaintiff's psychological condition. *See id.* at 322 (back pain), 397 (pain in right back and hip), 399 (gynecological exam), 418 (back pain); *see also Tucker v. Sullivan*, 779 F. Supp. 1290, 1298 (D. Kan. 1991) ("Although the physicians who treated the plaintiff at that time made no mention of any mental disease, it must be noted that these physicians examined plaintiff expressly for arthritis problems only. Their silence on the subject of plaintiff's mental impairment, thus, suggests only that the impairment was not detected at that time; it says very little about whether or not the impairment existed."). The notations that Plaintiff had normal mood and affect during a physical examination are not psychiatric examinations that would contradict Dr. Muirhead's opinion concerning Plaintiff's functional abilities and diagnoses. There is no evidence in the record that a mental health professional has provided contrary evidence to refute Dr. Muirhead's findings that Plaintiff suffers from borderline intellectual functioning and adjustment disorder with anxiety. *See Blades*, 2003 U.S. Dist. LEXIS 23165, at *31-*32 (remanding where no contrary evidence refuted examining physician's opinion of mental impairment); *Davis v. Chater*, 952 F. Supp. 561, 566-67 (N.D. Ill. 1996) (remanding where

psychological examiner found borderline intellectual functioning, which was the only evidence in the record on that issue).

Nor does the timing of Dr. Muirhead's psychiatric examination provide a reason for rejecting his opinion. There is a presumption that IQ remains stable over time, *see Adams v. Astrue*, No. 4-10-cv-BD, 2011 WL 2550772, at *3 (N.D. Tex. June 27, 2011), and there is no medical evidence in the record that Plaintiff's borderline intellectual functioning improved over time, *see Muncy v. Apfel*, 247 F.3d 728, 734 (8th Cir. 2001) ("[A] person's IQ is presumed to remain stable over time in the absence of any evidence of a change in the claimant's intellectual functioning.").

The ALJ also observed that Plaintiff "worked until late 2011 in the home healthcare field in a position that was consistent with the basic recommendations of the DARS report and that required a higher specific vocational preparation than unskilled work." Tr. at 42. The testifying vocational expert classified that work as home health attendant, which is semi-skilled. *See id.* at 88. But a person may meet the diagnostic definition of a mental impairment listing even if she has worked in the past. *See Blancas v. Astrue*, 690 F. Supp. 2d 464, 476 (W.D. Tex. 2010); *Durden v. Astrue*, 586 F. Supp. 2d 828, 837 (S.D. Tex. 2009). And, to determine disability, the ALJ "must consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity." 42 U.S.C. § 423(d)(2)(B) (2013). The ALJ seems to have assumed that Plaintiff did not have a mental impairment simply because she had previously worked in a semi-skilled position but failed to consider whether her borderline intellectual functioning and

12

adjustment disorder with anxiety, in combination with physical impairments that developed since time, impaired her ability to work. Thus, Plaintiff's prior employment does not provide medical evidence to contradict Dr. Muirhead's opinion.

The ALJ also observed that Plaintiff did not list a mental impairment when she originally applied for disability benefits. *See* Tr. at 42. The ALJ is required to consider all of Plaintiff's impairments, not only those listed in the original application. *See Beth v. Astrue*, 494 F. Supp. 2d 979, 1006-07 (E.D. Wis. 2007) ("ALJs should not ignore medical reports simply because they predate the alleged onset of disability."); 20 C.F.R. §§ 404.1527(c), 416.927(c) (ALJ must weigh all medical opinions, regardless of their source). This is especially so in the case of a claimant suffering from borderline intellectual functioning who may lack the insight to specifically articulate all of her disabling impairments. *See Brashears v. Apfel*, 73 F. Supp. 2d 648, 651 (W.D. La. 1999).

For all of these reasons, the ALJ's rejection of Dr. Muirhead's opinion is not supported by substantial evidence. An ALJ may weigh competing medical opinions, *see Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012), but may not substitute his lay opinion for the uncontroverted medical opinion of the only physician who performed a psychiatric examination of Plaintiff, *see Blades*, 2003 U.S. Dist. LEXIS 23165, at *31-*32.

The Court further finds that this error was prejudicial. First, had the ALJ considered Dr. Muirhead's opinion, he may have found a severe mental impairment. And, second, while the ALJ was not required to perform the special technique unless

and until he determined that Plaintiff suffered from a serious mental impairment, *see* 20 C.F.R. §§ 404.1520a(b)(1), (2); 20 C.F.R. § 416.920a, he did have a duty to fully develop the record, *see Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000); *Ripley*, 67 F.3d at 557. When an ALJ fails to fully develop the record, he lacks sufficient facts to make an informed decision, and his decision is not supported by substantial evidence. *See Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996); *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984). An ALJ must order a consultative evaluation when it is necessary to enable the ALJ to make the disability determination, but a consultative evaluation is necessary only when the evidence raises a suspicion of a non-exertional impairment. *See Brock*, 84 F.3d at 728; 20 C.F.R. §§ 404.1517, 416.917.

Dr. Muirhead's psychological examination report raised a suspicion of a mental impairment, and, had the ALJ ordered a consultative examination, it may have corroborated Dr. Muirhead's findings and conclusions. Plaintiff's substantial rights have been affected because the ALJ's decision may have been different under either scenario.

Because this error alone is enough to require remand, the Court need not consider Plaintiff's argument that the ALJ failed to apply the correct legal standards to the examining physicians' opinions.

## Conclusion

The hearing decision is reversed, and this case is remanded to the Commissioner of Social Security for further proceedings consistent with this opinion.

DATED: July 1, 2015

DAVID L. HORAN
UNITED STATES MAGISTRATE JUGE